EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Javier Rivera Fábregas | |
| Demandante-Recurrido | Certiorari |
| v. | 2005 TSPR 65 |
| Ruth Sanoguet Asencio y Otros | 163 DPR \_\_\_\_ |
| Demandadados-Peticionarios | |
| Ángel A. Vázquez González | |
| Interventor | |

Número del Caso: CC-2003-270

Fecha: 13 de mayo de 2005

Tribunal de Apelaciones:

        Circuito Regional VII de Carolina y
        Fajardo

Juez Ponente:

        Hon. Rafael Martínez Torres

Abogados de la Parte Peticionaria:

        Lcdo. Agustín F. Fortuño
        Lcdo. Jorge O. Sosa Ramírez
        Lcdo. Relin Sosa Ramírez

Abogado de la Parte Recurrida:

        Lcdo. José Félix Ramírez Ramos

Materia: Recuperación de la posición de inmueble; daños y
        Perjuicios.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Javier Rivera Fábregas

Demandante-Recurrido

    v.

                               CC-2003-270    Certiorari

Ruth Sanoguet Asencio y Otros

Demandados-Peticionarios

Ángel A. Vázquez González

Interventor

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 13 de mayo de 2005.

Nos corresponde determinar si es válido un legado de cosa específica y determinada cuando sobre dicho objeto opera la figura del retorno sucesorio.

I.

El Sr. Juan Ramírez Sanoguet (en adelante el señor Ramírez Sanoguet) falleció en febrero de 1994. Era soltero y no tenía hijos o descendencia alguna. Sus parientes más cercanos y legitimarios eran sus padres, el Sr. Juan Ramírez Seda (en adelante señor

Ramírez Seda) y la Sra. Ruth Sanoguet Asencio (en adelante señora Sanoguet Asencio).

2

Unas semanas antes de morir, el señor Ramírez Sanoguet otorgó testamento abierto en el que dispuso que la mitad de su caudal se le entregara a sus padres y legitimarios. Además, ordenó que la casa en la que residía[1] fuera entregada al Sr. Luis Rivera Fábregas (en adelante señor Rivera Fábregas) en calidad de legado. Prohibió expresamente que se dividiera el inmueble y expresó que, de ser necesario, debía usarse toda la mitad de libre disposición para pagar dicho legado.

El referido inmueble había sido propiedad del matrimonio compuesto por los padres del testador. Al divorciarse éstos, el señor Ramírez Seda donó su participación del cincuenta por ciento (50%), por partes iguales, a los hijos de su matrimonio con la señora Sanoguet Asencio, es decir, al señor Ramírez Sanoguet y su hermana, la Sra. Sonia Ramírez Sanoguet. Un tiempo después, el señor Ramírez Sanoguet compró a su hermana su participación del veinticinco por ciento (25%). Posteriormente la señora Sanoguet Asencio donó su mitad del inmueble al señor Ramírez Sanoguet, constituyéndose este último como único dueño de la propiedad.

En atención a lo dispuesto por el señor Ramírez Sanoguet en su testamento, el señor Rivera Fábregas reclamó su legado. No obstante, la señora Sanoguet Asencio y la sucesión del señor

---

[1] Dicha casa está ubicada en la Calle Fátima de la Urbanización El Palmar en Isla Verde (en adelante el inmueble o la propiedad).

Ramírez Seda, quien había fallecido unos meses después que su hijo, se opusieron. Adujeron que en virtud del retorno sucesorio, tenían derecho a que se les entregara el inmueble.

Evaluados los planteamientos de las partes, el Tribunal de Primera Instancia declaró nulo el legado sumariamente. Inconforme, el señor Rivera Fábregas acudió al Tribunal de Apelaciones. Dicho foro revocó el dictamen de instancia tras concluir que como los legados de cosa específica y determinada se adquieren inmediatamente con la muerte del causante, en la sucesión del señor Ramírez Sanoguet no quedaba ya un bien sobre el cual podía operar el retorno sucesorio.

De esa sentencia recurren la señora Sanoguet Asencio y la sucesión Ramírez Seda. En síntesis señalan que erró el Tribunal de Apelaciones al sostener que no aplicaba el retorno sucesorio a un inmueble donado por unos ascendientes a un descendiente que les premurió sin dejar posteridad cuando ese inmueble ha sido objeto de legado. Con el beneficio de la comparecencia de las partes, resolvemos.

II.

A.

En Puerto Rico la norma relativa al retorno sucesorio, que aplica tanto a la sucesión testada como a la intestada, Art. 901 del Código Civil, 31 LPRA sec. 2654, está consagrada en el

CC-2003-270                                         4

                              2

                                                         3
Art. 740 del Código, 31 LPRA sec. 2367 (en adelante Art. 740).

Dicho artículo reza:

> Los ascendientes suceden con exclusión de otras personas en las cosas dadas por ellos a sus hijos o descendientes muertos sin posteridad, cuando los mismos objetos donados existan en la sucesión. Si hubieren sido enajenados, sucederán en todas las acciones que el donatario tuviera con relación a ellos, y en el precio si se hubieren vendido, o en los bienes con que se hayan substituido, si los permutó o cambió.

Los antecedentes históricos del retorno sucesorio se remontan a tiempos romanos, cuando la dote pagada por los padres al casarse sus hijas retornaba a ellos si éstas los premorían. Juan Vallet de Goytisolo, *Panorama del derecho de sucesiones I Fundamentos*, Ed. Civitas, 1982, pág. 935. En España, de donde proviene nuestro artículo 740, el precepto se incorporó al Código Civil de 1889, usando como modelo el código francés. José Castán Tobeñas, *Derecho civil español, común y foral*, Tomo VI, Vol. II, Reus, 1979, pág. 526. A pesar de que usó como base la disposición francesa, el legislador español se alejó de ésta al ampliar los supuestos en los que podía operar el retorno. Así, el código español ordena el retorno en la sucesión testada y la intestada, mientras que en Francia sólo se conocía en la sucesión intestada.[2] *Véanse*, Antonio Román García, *El derecho de*

---

[2] Otra diferencia notable es que en Francia, si el objeto donado había sido enajenado por venta, el ascendiente donante sólo podía suceder en cuanto al precio que aún quedara por pagar. Además, los otros supuestos de subrogación que se incluyeron en

2

3

*reversión legal*, Editorial Montecorvo, 1984, pág.73, Luis Gómez Morán, *Las Reservas en el Derecho Español y en el Comparado*, Oviedo, 1949, pág. 108.

En Puerto Rico se incorporó la norma a la usanza española. Nuestro artículo 740 corresponde exactamente al artículo 812 del Código Civil Español. Además, al igual que en España, la figura del retorno aplica a la sucesión testada y a la intestada. De ahí que nuestro retorno sucesorio, como se expondrá más adelante, se configurara de forma que tuviese un amplio alcance.

B.

En el pasado no hemos tenido ocasión de expresarnos sobre la figura regulada por el Art. 740. Esta disposición otorga un derecho condicional a un ascendiente donante a suceder a su descendiente donatario en los bienes que le haya donado o en lo que haya tomado el lugar de ellos en la sucesión del causante. Se trata de un derecho que surge únicamente cuando ha habido una donación de un ascendiente a un descendiente. *Véanse*, Xavier O'Callaghan Muñoz, *Compendio de derecho civil, Tomo V Derecho de Sucesiones*, Editorial Revista de Derecho Privado, 1987, pág. 298, Jaime Santos Briz, *Derecho Civil, Teoría y Práctica VI,* Editorial Revista de Derecho Privado, 1979 pág. 597.

_____

el Art. 812 español, equivalente a nuestro Art. 740, no formaban parte de la norma francesa. Román García, *supra*.

2

En atención a los sujetos, para que aplique el    Art.[3] 740 se exige que haya un ascendiente que sea también donante y que el beneficiado por la donación sea un descendiente de éste. En atención al objeto, el Art. 740 dispone que esta sucesión operará sobre el mismo bien donado cuando éste exista en el caudal. Si no existe, pero en su posición se han subrogado el precio de venta (en caso de que hubiese sido vendido) u otro bien (si es que el objeto de la donación ha sufrido permuta) el retorno operará sobre ellos. Incluso cuando en el caudal no existe el mismo bien donado, ni una cantidad de dinero que haya sido pagada en virtud de una compraventa, ni otro bien que se haya adquirido por permuta con lo donado, el retorno operará sobre las acciones que el descendiente donatario tuviera con relación al bien.

El ascendiente sucede entonces en el bien donado o lo que en su lugar exista en el caudal. Debe notarse que la orden es de suceder y es con exclusión de cualquier otra persona. El ascendiente sustituye al causante por causa de muerte y específicamente con relación al bien donado. No se expresa, ni es necesario, si esa sucesión es a título de heredero o legatario. En resumidas cuentas, ambas son formas en que se puede suceder. *Véase* Vallet de Goytisolo, *supra,* pág. 19.

Esta sucesión, sin embargo, que sólo se dará a favor del ascendiente donatario y sobre el objeto donado o lo que lo haya

2

sustituido en el caudal, está sujeta a dos condiciones: (1)³ que el causante premuera a su ascendiente donante, y (2) que no haya tenido descendencia propia. En ausencia de cualquiera de esas condiciones, no opera el retorno. *Véase*, O'Callaghan Muñoz, *supra*.

Ante el supuesto de una donación hecha por un ascendiente a un descendiente y cumplidas las dos condiciones antes señaladas, inmediatamente después de la muerte del causante operará el retorno sobre el bien donado o lo que en su lugar se encuentre en el caudal. *Véase, Id.* Este efecto inmediato no se ve afectado por la presencia de un testamento pues, como se indicara antes, por disposición expresa del Art. 901, *supra*, el retorno sucesorio aplica a la sucesión intestada y a la testada.

Es necesario aclarar que aunque el retorno sucesorio regula el destino de los bienes donados una vez acontece la muerte del descendiente donatario en las circunstancias antes descritas, esto en nada afecta la plenitud de los derechos que en vida tiene el causante sobre el objeto. Vallet de Goytisolo, *supra*, pág. 946. El descendiente puede gravar, enajenar, donar o de cualquier modo disponer del bien donado por negocio inter vivos sin que el Art. 740 sea óbice para ello. Miguel Royo Martínez, *Derecho Sucesorio mortis causa,* Editorial Edelce, 1951, pág. 217, Vallet de Goytisolo, *supra,* pp. 944, 946. Las

2

limitaciones que esta figura impone aplican a la disposición mortis causa de los bienes donados. *Véase,* Royo Martínez, *supra.*[3]

### III.

La figura del legado se encuentra reglamentada en varias disposiciones del Código Civil. Aunque el Código no suple una definición para este concepto, en el Art. 609, 31 LPRA sec. 2091, se expresa que legatario es el que sucede a título particular, diferente al heredero, que sucede a título universal.

Con referencia al vacío en la definición del legado, Puig Brutau ha expresado que resulta difícil proveer una definición que abarque todos los supuestos en que se puede dar un legado. José Puig Brutau, *Fundamentos de Derecho Civil, Tomo V, volumen II,* Bosch, 1977, pág. 398. Por eso, nos explica, Lacruz ofrece una definición negativa del legado: cualquier disposición mortis causa que confiera derechos al favorecido pero que no sea una institución de heredero. Puig Brutau, *supra*, pág. 402. Con mayor especificidad, el profesor González Tejera define el legado como una atribución que hace el testador a favor de una o varias personas, determinadas o determinables, por la cual ordena a uno o a más de sus herederos, al albacea o, inclusive, a otro legatario, a que a su debido tiempo proceda a ceder o a hacer al legatario un derecho, una cosa o un servicio, o entregar una fracción del activo neto hereditario. Efraín González Tejera,

2

3
*Derecho de sucesiones Tomo II: La sucesión testamentaria*,
Editorial de la Universidad de Puerto Rico, 2001, pág. 390.

A la definición del legado, Puig Brutau añade que los legatarios son el tercer grupo de sujetos, después de los acreedores del causante y de la herencia y los legitimarios, cuyo interés prevalece por encima del peculiar del heredero y de sus propios acreedores. Puig Brutau, *supra*, pág. 400. **De ahí que los legatarios cobren después de los acreedores y que su atribución patrimonial pueda ser reducida a petición de los legitimarios si es que es inoficiosa o excesiva**. González Tejera, *supra* Tomo II, pág. 402, 405.

De otra parte, el análisis de la figura del legado debe particularizarse en atención al tipo de legado del que se trate. En cuanto al legado de cosa específica y determinada, el Código especifica que el legatario adquirirá la propiedad desde que muere el testador,     Art. 804, 31 LPRA sec. 2493, aunque no pueda ocupar la cosa legada por su propia autoridad sino que tendrá que pedir la entrega y posesión al heredero o al albacea, si está autorizado para darla, Art. 807, 31 LPRA sec. 2496. Se trata de una disposición exclusiva al legado de cosa específica y determinada del testador, puesto que los demás legados sólo le proveen al legatario un derecho de crédito contra la persona a la que se le ha impuesto el pago del legado. Puig Brutau, *supra*, pág. 412.

2

3

Ese derecho a adquirir la propiedad del legado de cosa específica y determinada del testador desde la muerte misma de éste, sin embargo, no impide que los acreedores, legitimarios o legatarios preferentes puedan cobrar lo que les corresponda, aún a cuesta del legado de cosa específica. La propiedad que se adquiere inmediatamente a la muerte del causante en virtud de un legado de cosa específica es una especial, condicionada y con consecuencias distintas de la verdadera propiedad. Narváez Cruz v. Torres Rada, 2002 TSPR 1, res. el 4 de enero       de 2002. Así, el legatario de cosa específica y determinada propia del testador adquiere la propiedad del legado desde la muerte misma de éste, pero por la subordinación del legado a los intereses de otros sujetos, como los acreedores, legitimarios y legatarios preferentes, éstos pueden obtener luego que se borren los efectos del referido legado. Revista de Derecho Privado, *Comentarios al Código Civil y Compilaciones Forales*, Manuel Albaladejo Dir., Tomo XII, Editorial Revista de Derecho Privado, 1981, pág. 283.

IV.

El testador, señor Ramírez Sanoguet, adquirió el setenta y cinco por ciento (75%) de un inmueble en virtud de sendas donaciones hechas por sus padres. Posteriormente murió, sin dejar descendencia, sobreviviéndole sus padres y donantes del inmueble. En virtud de un testamento abierto, el inmueble fue

2

legado al señor Rivera Fábregas, es decir, a una persona diferente a los ascendientes que le donaron tres cuartas partes de la propiedad.

Al ser instituido el señor Rivera Fábregas como legatario de cosa específica y determinada del testador, adquirió la propiedad de ésta desde la muerte misma del señor Ramírez Sanoguet. No obstante, conforme señaláramos anteriormente, la propiedad que adquirió fue una especial y condicionada y podía tornarse ineficaz ante el supuesto que lesionara algún derecho preferente. Narváez Cruz, *supra*, Revista de Derecho Privado, *supra*.

Entendemos que los ascendientes llamados en virtud del Art. 740 a suceder con exclusión de cualquier otra persona en los bienes donados por ellos a un descendiente que les premuera sin descendencia forman parte del grupo de sujetos que pueden, mediante el ejercicio de la acción legal pertinente, obtener que se borren los efectos de la adquisición inmediata del legado. Al expresar el Código Civil que el ascendiente donante **"sucede con exclusión de otras personas"** en el bien donado si se cumplen las condiciones allí expuestas, y al disponerse expresamente que esa norma aplica en la sucesión testada e intestada, se faculta al ascendiente donante a reclamar que se impida que el objeto donado pase por disposición mortis causa a otro que no sea él mismo. Resulta indiferente si el título por el que el

2

3

descendiente donatario pretenda disponer del objeto en ocasión de su muerte a favor de un tercero sea el de heredero o el de legatario. El texto del Art. 740 no permite otra interpretación que no sea que el ascendiente donante llamado tenga preferencia sobre las demás personas, incluido el legatario de cosa específica y determinada, sobre el objeto de la donación.[3]

No empece las críticas que se puedan hacer a la figura regulada por el Art. 740 por ser foránea a nuestro ordenamiento o por ser arcaica, como señaló el señor Rivera Fábregas, debe notarse que el legislador decidió incorporarla en nuestro Código Civil y la hizo aplicable tanto a la sucesión testada como a la intestada. De este modo instituyó otro derecho que, como las legítimas, predomina sobre la voluntad individual del testador. La decisión de si esa figura es indeseable en nuestro

---

[3] De ahí que no nos convenza el razonamiento del Tribunal de Apelaciones. En síntesis, ese foro determinó que el legado remueve el objeto de la sucesión de forma que, al abrirse ésta, no está ya el objeto y no hay nada que pueda retornar a los ascendientes. Esa conclusión sería contraria al claro texto del Art. 740, que dispone que el ascendiente sucederá con exclusión de otras personas, tanto en la sucesión testada como en la intestada, Art. 901, *supra*. Al legislador expresar que aplicaba el retorno en la sucesión testada no hizo distinción entre la sucesión a título de legatario y aquella a título de heredero. Por ser ambas formas mediante las cuales se sucede por testamento, quedaron afectadas las dos por el retorno sucesorio.

Además, conforme se señalara antes, la adquisición de la propiedad del legado de cosa específica es una especial y sucumbe ante derechos que han sido tratados preferentemente por el legislador. El texto usado en la disposición sobre el retorno sucesorio, su aplicación a la sucesión testada y su inclusión en la parte del Código Civil que regula las legítimas indican un trato privilegiado en cuanto a este derecho.

2

ordenamiento corresponde al legislador, que está facultado para
eliminarla o modificarla de la manera que estime prudente.[4]

Estando vigente el Art. 740 del Código Civil y
cumpliéndose en este caso con las condiciones necesarias para su
aplicación, es decir, que un ascendiente haya donado un bien a
un descendiente, que éste haya muerto antes que el ascendiente y
sin descendencia propia, los ascendientes donantes señora
Sanoguet Asencio y señor Ramírez Seda (su sucesión) deben
suceder con exclusión de cualquier otra persona en las porciones
del inmueble por ellos donadas al señor Ramírez Sanoguet. En
cuanto a dichas participaciones en el inmueble, el legado al
señor Rivera Fábregas resultó ser inoficioso, por lo que procede
reducirse. *Véase,* Art. 745, 31 LPRA sec. 2371.

Al resolver que el Art. 740 impide que se legue un bien
sobre el que operaría dicho artículo coincidimos con un
importante sector de la doctrina española, que entiende que esta
figura le impide al descendiente donatario disponer mortis causa
del bien donado. *Véanse,* Royo Martínez, *supra,* pág. 217, José
María Manresa y Navarro, *Comentarios al Código Civil Español,*
Tomo VI, vol. I, Reus, 1973, pág. 628. Algunos autores han

---

[4] Así ocurrió en Francia en 1972, cuando el **legislador francés derogó** el Art. 747, quedando así fuera de su código la disposición análoga al Art. 812 español y el 740 puertorriqueño. *Véase,* Efraín González Tejera, *Derecho de sucesiones Tomo I: La sucesión intestada,* Editorial de la Universidad de Puerto Rico, 2001, pág. 364.

2

3

expresado que esta figura implica la exclusión de la herencia de los bienes donados a personas que de otra forma hubiesen tenido derecho a suceder en ellos. Luis Diez-Picazo y Antonio Gullón, *Sistema de Derecho Civil*, Vol. IV, Tecnos, 1997.  Otros no se han dirigido al tema específicamente,[5] concentrándose en vez en aspectos de la figura que, dada la parquedad con la que el Código la regula, pueden dar margen a cierta confusión.[6]

V.

---

[5] Así ocurre, por ejemplo, con O'Callaghan Muñoz, *op cit.*, con los *Comentarios al Código Civil y Compilaciones Forales* dirigidos por Manuel Albaladejo, Tomo XI, Editorial Revista de Derecho Privado, 1982, a la pág.144, con Francisco Bonet Ramón, *Compendio de Derecho Civil, Tomo V*, Editorial Revista de Derecho Privado, 1965, a la pág. 606 y con José Castán Tobeñas, *supra*, a la pág. 528. De lo expuesto por estos autores, sin embargo, tampoco podría sostenerse que el legado de cosa específica y determinada derrote la operación del retorno sucesorio. Los primeros tres tratadistas son de la opinión que los bienes objeto del retorno conforman una sucesión especial, separada y distinta de la sucesión ordinaria del causante. Según estos autores, será esta última sucesión y no la primera, la que deba responder por el pago de legítimas y a base de la cual se calcularán tanto éstas como la parte de libre disposición. Castán, por su parte, sostiene que el retorno alcanza incluso los bienes que el descendiente donatario hubiese donado en vida a otra persona. Ante tales exposiciones, difícilmente se podría argüir que estos autores de forma alguna favorecen el que el legado sustraiga de la sucesión del causante la cosa donada de forma que no pueda aplicarse el retorno sucesorio.

[6] Por ejemplo, por muchos años los autores discutieron el efecto que la descendencia no legítima del descendiente donatario pudiese tener sobre el retorno. *Véase*, Manresa, *supra.* Tras la reforma en la legislación española de los años setenta y ochenta del siglo pasado, el debate se tornó académico, puesto que la descendencia adoptiva y la habida fuera de matrimonio vieron sus derechos equiparados a la llamada descendencia legítima. *Véase* Revista de Derecho Privado, *supra*, pág. 135.

2

3

Lo anterior no dispone enteramente de esta controversia. Según se señalara anteriormente, estamos ante dos donaciones independientes y hechas por personas diferentes. Cada ascendiente donante recibirá, en virtud de lo dispuesto en el Art. 740, en la misma proporción en que donó. De esta forma la sucesión del señor Ramírez Seda recibirá el veinticinco por ciento (25%) del inmueble y la señora Sanoguet Asencio recibirá el cincuenta por ciento (50%). El restante veinticinco por ciento (25%), sin embargo no es objeto del Art. 740 puesto que no fue adquirido por el señor Ramírez Sanoguet a título de donación, sino por compraventa. No procede, pues, que se le atribuya esta última participación ni a la sucesión Ramírez Seda ni a la señora Sanoguet Asencio.

La señora Sanoguet Asencio propone, en su alegato, que dicha porción del veinticinco por ciento (25%) se refunda en la masa hereditaria. Arguye que por haber prohibido el testador la división del inmueble no procede que se entregue esa participación en el inmueble al señor Rivera Fábregas en virtud del legado instituido por el testador. No nos convence su argumento.

El señor Juan Ramírez Sanoguet hizo uso de la facultad que otorga el Art. 1005 del Código Civil, 31 LPRA sec. 2871, y prohibió la división del inmueble que legó al señor Rivera Fábregas. El referido artículo dispone, en lo pertinente, que el

2

testador puede prohibir expresamente la división de la herencia salvo en cuanto a los bienes que constituyen la legítima de los herederos. Añade que en cualquier caso procederá la división por alguna de las causas que dan motivo a la extinción de la sociedad.

La prohibición que hizo el señor Ramírez Sanoguet de dividir el inmueble no impide que el veinticinco por ciento (25%) de éste que no es objeto del retorno se le entregue al señor Rivera Fábregas como legado. La prohibición de división no afecta la identidad de las personas que deban recibir determinado bien de la herencia. El artículo no se refiere a exclusión de sujetos de la herencia, sino al trato que ha de dársele al objeto afectado por la prohibición. Además, si el argumento implícito de la señora Sanoguet Asencio es que para respetar la prohibición de división que hiciera el testador no se puede atribuir el inmueble a más de una persona, éste se desploma ante la operación del Art. 740 con relación a dos ascendientes donatarios distintos, uno de ellos ahora sustituido por las varias personas que constituyen su sucesión, sobre un mismo objeto. Ante la realidad innegable que este inmueble ya pertenece en diferentes proporciones a varias personas, no puede objetarse el que se sume una más, sobre todo aquella que el testador quería instituir como propietaria de la casa, por razón de la prohibición de división.

2

3

Al resolver de esta manera actuamos conforme a nuestro ordenamiento sucesorio, que dispone que las cláusulas testamentarias no deben interpretarse de forma aislada y ajena a la voluntad del testador que se desprende del conjunto de todas ellas. *Véase*, Licari v. Dorna, 148 DPR 453, 462 (1999). Además, nuestro rol es cumplir con la voluntad del testador en lo que ésta no sea contraria a la ley. Torres Ginés v. ELA, 118 DPR 436, 445 (1987).

A tenor con todo lo anterior, procede que el inmueble se le atribuya a la señora Sanoguet Asencio en la misma porción en que ella lo donó a su hijo premuerto sin descendencia, a la sucesión del señor Ramírez Seda en la misma proporción en que éste hizo donación a su hijo premuerto sin descendencia, y en el remanente al señor Rivera Fábregas en calidad de legatario. Lo anterior, por supuesto, está sujeto a que se efectúen los trámites sucesorios necesarios, incluyendo el pago de las deudas del caudal.[7]

VI.

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones y se devuelve el caso al

---

[7] Según se desprende del expediente, aún quedan múltiples trámites de la sucesión que deben llevarse a cabo, entre ellos el pago de las cuantiosas deudas que dejó el causante y por las cuales debe responder todo el caudal, incluidos los bienes objeto de retorno sucesorio.

2

Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                              Federico Hernández Denton
                                   Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Luis Javier Rivera Fábregas

Demandante-Recurrido

     v.

Ruth Sanoguet Asencio y Otros

Demandados-Peticionarios

Ángel A. Vázquez González

Interventor

CC-2003-270    Certiorari


SENTENCIA


San Juan, Puerto Rico, a 13 de mayo de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca el dictamen del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo