ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| LISIA EMBREE PÉREZ y BELINDA EMBREE,<br><br>Peticionaria,<br><br>v.<br><br>RUSSELL WILLIAM EMBREE PÉREZ, conocido como RUSSELL WILLIAM EMBREE,<br><br>Recurrida. | TA2025CE00821 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Región Judicial de Aguadilla, Sala Superior de Aguada.<br><br>Civil núm.: AU2024CV00485.<br><br>Sobre: impugnación de testamento; actuaciones de albacea; dolo, y daños y perjuicios. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 20 de enero de 2026.

El 19 de noviembre de 2025, las hermanas Lisia Embree Pérez y Belinda Embree (hermanas Embree), instaron un escrito intitulado *Apelación*, el cual fue acogido como un recurso de *certiorari*[1]. En él, solicitaron que este Tribunal revisara la resolución intitulada *Sentencia*, emitida por el Tribunal de Primera Instancia, Sala Superior de Aguada, el 20 de octubre de 2025, notificada al día siguiente. Mediante esta, el foro primario anuló la institución de herederos hecha en el testamento impugnado por las peticionarias por causa de preterición, pero mantuvo las disposiciones relacionadas a los tercios de libre disposición y de mejora, así como aquella sobre la designación al cargo de albacea.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y confirmamos la resolución recurrida.

I

Conforme surge del expediente, el 2 de agosto de 2024, las hermanas Embree instaron una demanda intitulada *Impugnación de testamento, actuaciones de albacea testamentarios, dolo y daños y*

---

[1] Véase, *Resolución* emitida el 21 de noviembre de 2025.

*perjuicios* contra su hermano y aquí recurrido, el señor Russell William Embree Pérez (señor Russell)[2]. Por medio de esta, solicitaron la nulidad de la institución de herederos y de las disposiciones relacionadas al tercio de libre disposición contenidas en el testamento de su padre, el causante William Embree Sefried (Embree Sefried), quien falleció el 1 de marzo de 2014, tras haber otorgado un testamento abierto el 20 de octubre de 2011. Como fundamento, precisaron que la peticionaria, Belinda Embree, fue preterida en el testamento impugnado. Además, solicitaron la remoción del señor Russell como albacea debido a su presunto incumplimiento con los deberes de su cargo.

Tras varias incidencias procesales, el 17 de mayo de 2025, las hermanas peticionarias presentaron una solicitud de sentencia sumaria parcial[3]. Principalmente, reiteraron sus alegaciones sobre la nulidad de la institución de herederos y sus efectos sobre el patrimonio de la herencia, en virtud de lo cual solicitaron la apertura de una sucesión intestada y la declaración de Belinda Embree como coheredera legitimaria del causante. Arguyeron, además, que tal declaración dejaría sin efecto la designación del recurrido para el cargo de albacea.

Posteriormente, el 4 de junio de 2025, el señor Russell presentó su oposición a la expedición del recurso[4]. En esta, admitió que medió la preterición de la hermana peticionaria. Sin embargo, sostuvo que existían controversias sobre el resto de las alegaciones.

El 20 de octubre de 2025, notificada al día siguiente, el Tribunal de Primera Instancia emitió una resolución intitulada *Sentencia*[5]. En ella, el foro primario declaró sin lugar la solicitud de sentencia sumaria parcial presentada por las hermanas Embree. No obstante, **determinó que Belinda Embree fue preterida en el testamento impugnado, y procedió**

---

[2] *Véase*, apéndice del recurso, entrada núm. 1, SUMAC TA.

[3] *Íd.,* entrada núm. 31.

[4] *Íd.*, entrada núm. 35.

[5] *Íd.*, entrada núm. 37.

**a declararla heredera legitimaria del causante, junto a sus hermanos previamente instituidos**. Por consiguiente, determinó que el testamento del causante era parcialmente eficaz, por lo que procedía la apertura de una **sucesión mixta** que respetase la voluntad del testador en cuanto a los tercios de mejora y de libre disposición, y en cuanto a la designación del cargo de albacea.

Inconforme con el proceder del foro primario, el 19 de noviembre de 2025, las hermanas Embree recurrieron ante nos, y formularon los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al dictar la sentencia apelada sin resolver en una vista evidenciaria o juicio el cargo y las actuaciones del albacea por la falta de fiducia del señor Russell William Embree Pérez, albacea nombrado mediante escritura pública testamento abierto número 88 de día 20 de octubre de 2011, ya que no había evidencia suficiente para relevarlo de ese cargo.
>
> Erró el Tribunal de Primera Instancia al dictar la sentencia apelada anulando la institución de heredero testamentaria y determinar que subsistía la cláusula del testamento en la cual se le adjudicaba el tercio de libre disposición a favor del albacea y heredero Russell William Embree.
>
> Erró el Tribunal de Primera Instancia al dictar la sentencia apelada sin resolver en juicio la solicitud de daños causados a la sucesión de William Russell Embree Sefreid por las actuaciones del albacea, señor Russell William Embree Pérez, en detrimento de los mejores intereses de los miembros de la sucesión por no haber realizado el inventario del caudal hereditario después de tomar posesión de su cargo y al no nombrar un contador partidor.

Por su parte, el 11 de diciembre de 2025, el señor Russell presentó su oposición a la expedición del recurso. Evaluados los argumentos de las partes, resolvemos.

II

A

El Código Civil de Puerto Rico de 1930[6] define a la sucesión hereditaria, en su acepción más simple, como la transmisión de los derechos y obligaciones de un causante a sus herederos. 31 LPRA sec.

---

[6] El Art. 1816 del Código Civil de 2020, 31 LPRA sec. 11721, expresamente dispone que "[l]**os derechos a la herencia de quien ha fallecido, con testamento o sin él, antes de entrar en vigor este Código, se rigen por la legislación anterior**". (Énfasis nuestro). Por lo tanto, cualquier mención subsiguiente al Código Civil de Puerto Rico se entenderá que alude a su edición de 1930, aplicable a los hechos del caso.

2081. El causante puede deferir su sucesión mediante testamento, en virtud del cual puede disponer de todo o parte de sus bienes, ya sea a título de herencia o de legado. 31 LPRA sec. 2121-2122.

No obstante, esta facultad queda limitada ante la presencia de herederos forzosos o legitimarios, entre los cuales figuran los hijos y descendientes legítimos del causante. 31 LPRA sec. 2281 y 2362. Ello, pues la ley reserva a estos herederos una parte de la herencia, denominada la porción legítima. 31 LPRA sec. 2361. Por lo tanto, quien tiene legitimarios no puede disponer libremente de todos sus bienes, sino que deberá hacerlo de la forma que ordena el propio Código Civil. 31 LPRA sec. 2281.

Así, en cuanto a cómo se distribuyen las porciones de una herencia cuando existen legitimarios, el Art. 737 del Código Civil dispone lo siguiente:

> Constituyen la legítima de los hijos y descendientes legítimos las dos terceras partes del haber hereditario del padre y de la madre.
>
> Sin embargo, podrán éstos disponer de una parte de las dos que forman la legítima, para aplicarla como mejora a sus hijos y descendientes legítimos o naturales legalmente reconocidos.
>
> La tercera parte restante será de libre disposición.

31 LPRA sec. 2364.

Ahora bien, cuando el testador omite mencionar a uno de sus legitimarios, o no dispone de algún bien a favor de este, le priva tácitamente de su legítima, e incurre en la preterición. *Cabrer v. Registrador*, 113 DPR 424, 437 (1982); *Blanco v. Sucn. Blanco*, 106 DPR 471, 476 (1977).

En cuanto el efecto de la preterición, el Art. 743 del Código Civil expresamente dispone que "[l]a preterición de alguno o de todos los herederos forzosos en línea recta, sea que vivan al otorgarse el testamento o sea que nazcan después de muerto el testador, anulará la institución del heredero". 31 LPRA sec. 2368.

Sin embargo, **esto no implica la nulidad del testamento, pues subsistirán las mandas y mejoras instauradas por el testador, en tanto no resulten inoficiosas**. *Íd.*; *Cabrer v. Registrador*, 113 DPR, a la pág.

436. En estos casos, se abre la sucesión intestada en la parte de la herencia afectada por la anulación de la institución de herederos. *Blanco v. Sucn. Blanco*, 106 DPR, a las págs. 478-479; 31 LPRA sec. 2591(2).

B

Constituye norma de derecho reconocida que, al interpretar un testamento, prevalece la voluntad del testador. *Calimano Díaz v. Rovira Calimano*, 113 DPR 702, 706 (1983). Esta norma aparece estatuida en el Art. 624 del Código Civil, el cual dispone que "[t]oda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador. En caso de duda se observará lo que parezca más conforme a la intención del testador según el tenor del mismo testamento". 31 LPRA sec. 2129.

El profesor Efraín González Tejera ha denominado el principio establecido en el precitado artículo como la "regla básica", que consiste en que:

> "[…] prevalezca la voluntad real del testador, [por lo que la función judicial] en materia de interpretación testamentaria consiste en descubrir esa voluntad, a fin de que se produzcan en su día los efectos que quería el autor del testamento dentro del marco permitido por ley. Cuando el lenguaje que utiliza el autor es claro y su intención se manifiesta diáfanamente, esto es, que se desprende de una lectura literal de las disposiciones del testamento, la labor de interpretación resulta sencilla".

*Torres Ginés v. E.L.A.*, 118 DPR 436, 445 (1987), citando a E. González Tejera, *Derecho sucesorio puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. II, pág. 55.

Es decir, el Art. 624 del Código Civil establece el punto de partida para la interpretación de un testamento, el cual está presidido por el principio de la supremacía de la voluntad del testador. Así pues, el artículo citado obliga, como primera medida, a colegir la voluntad del testador del texto mismo de la disposición testamentaria. *Licari v. Dorna*, 148 DPR 453, 461 (1999). De esta manera, "[e]l intérprete [del testamento] no debe pasar de ahí cuando el texto de la cláusula testamentaria sea claro, de suerte que baste la simple lectura para determinar el propósito del testador. […]". *Íd.*, a la pág. 461 (citas omitidas).

La tarea de interpretar las disposiciones testamentarias cobra mayor relevancia ante la necesidad de determinar la naturaleza de la designación realizada al llamado a suceder. *Torres Martínez v. Torres Ghighlotty*, 175 DPR 83, 103 (2007). Ello, pues el Tribunal Supremo de Puerto Rico ha reconocido que la distinción entre un heredero y un legatario es una encomienda vital, aunque no siempre resulta de fácil precisión. *Íd.*

Según explicado anteriormente, el testador tiene facultad para disponer de sus bienes a título de herencia o de legado. Conforme a ello, es heredero aquel que sucede al causante a título universal, pues se le adjudica la totalidad de sus relaciones patrimoniales o una parte alícuota de las mismas, aun cuando no se le designe nominalmente como heredero. *Torres Martínez v. Torres Ghighlotty*, 175 DPR, a las págs. 101-102. Por su parte, es legatario aquel que lo sucede a título particular, ya sea porque se le adjudican bienes o derechos determinados. *Íd.*, a la pág. 102.

En lo pertinente a la controversia que nos ocupa, el legado se define como "la atribución que hace el testador a favor de una o varias personas, determinadas o determinables, [a quien se les cede o hace] un derecho, una cosa o un servicio, **o [se les entrega] una fracción del activo neto hereditario**." *Rivera v. Sanoguet*, 164 DPR 756, 765 (2005), citando a E. González Tejera, *Derecho de sucesiones: la sucesión testamentaria*, San Juan, Ed. U.P.R., 2001, T. II, pág. 390 (énfasis nuestro).

Entre los legados que permite nuestro ordenamiento jurídico civil se encuentra el legado de parte alícuota, el cual ha generado un debate doctrinal sobre los criterios históricos de interpretación, a saber, el sistema subjetivo y el objetivo. *Fernández v. Fernández*, 152 DPR 22, 43 (2000).

En síntesis, conforme al criterio objetivo, es heredero aquel a quien se le designa en la universalidad o a una porción aritmética de la herencia, mientras que el legatario es aquel a cuyo favor se disponen bienes específicos o determinados. *Torres Martínez v. Torres Ghighlotty*, 175 DPR, a la pág. 104. Esta teoría preceptúa la clasificación del llamamiento luego de tomar en consideración el contenido objetivo del testamento, sin

arrogarle mayor peso a la designación nominal realizada. *Torres Martínez v. Torres Ghighlotty*, 175 DPR, a la pág. 104.

Por su parte, el criterio subjetivo, adoptado en los casos más recientes, establece que la clasificación del llamamiento responderá a las palabras que utilizó el testador al momento de realizar el mismo. *Íd.*, a la pág. 105. A tenor con esto, "si el testador utiliza la palabra 'lego' se estará ante un legado y si emplea el término 'heredero' se tratará de un llamamiento en tal concepto". *Íd.*

En ese sentido, el Tribunal Supremo de Puerto Rico estableció que la teoría subjetivista constituye la regla general al momento de determinar si el llamamiento es a título de heredero o de legatario. *Íd.* Ello, pues la teoría objetivista solo debe resurgir cuando la voluntad del causante no resulte clara a la luz de los hechos particulares de cada caso. *Íd.*; *Torres Ginés v. E.L.A.*, 118 DPR, a la pág. 455.

Así, la norma prevaleciente sobre la interpretación de la voluntad del testador en cuanto a la clasificación del llamado a suceder quedó plasmada de la siguiente manera:

> En resumidas cuentas, **cuando la voluntad del testador es clara y no hay dudas sobre ella, se utilizará la teoría subjetivista o romana**. De otro lado, se aplicará el criterio objetivista o germánico, cuando de un examen integral del testamento se concluya que la voluntad del causante es difusa y hay dudas sobre ésta. Al realizar el análisis, es preciso tener por norte que nuestro ordenamiento sucesorio está 'cimentado en dar cumplimiento a la voluntad del testador en la disposición de sus bienes en lo que no sea contrario a la ley'".

*Torres Martínez v. Torres Ghighlotty*, 175 DPR, a las págs. 106-107 (Énfasis nuestro).

Por consiguiente, una porción alícuota de una herencia, tal como la porción de libre disposición, puede transmitirse a título de legado si así lo plasma expresamente el testador, cuya intención queda configurada claramente y sin problemas en su interpretación. *Fernández v. Fernández*, 152 DPR, a la pág. 48; *Torres Ginés v. E.L.A.*, 118 DPR, a la pág. 456. Véase, además, *Torres Martínez v. Torres Ghighlotty*, 175 DPR, a la pág. 106.

III

Según expresamos mediante nuestra *Resolución* del 21 de noviembre de 2025, nos encontramos ante la revisión de una resolución que solamente dispuso del incidente relacionado a la preterición y la anulación de la institución testamentaria de herederos. Dejó pendiente de resolución el resto de las reclamaciones, relacionadas a las imputaciones en contra del coheredero recurrido y los presuntos daños que este causó por la conducta desplegada como albacea testamentario.

En tanto el primer y el tercer error imputados versan sobre controversias pendientes de adjudicación por el Tribunal de Primera Instancia, nos vemos impedidos de considerar los planteamientos relacionados a dichos señalamientos[7]. Por lo tanto, limitamos nuestra revisión a los planteamientos relacionados al segundo señalamiento de error.

Sobre el único error revisable, las hermanas Embree sostienen que el Tribunal de Primera Instancia se equivocó al determinar que la disposición testamentaria sobre el tercio de libre disposición, asignada a favor del señor Russell, sobrevivía los efectos de la anulación de la institución de herederos por causa de la preterición consumada.

Las hermanas peticionarias aducen que el lenguaje empleado por su padre para ordenar la distribución de su herencia en el testamento impugnado demuestra claramente su intención de arrogársela en gran mayoría al señor Russell. Arguyen, además, que dicho lenguaje tampoco altera la naturaleza abstracta de la asignación del tercio de libre disposición. Por ello, coligen que dicha porción fue dejada al coheredero recurrido a título de herencia, y no de legado, por lo que debe sobrellevar las consecuencias de la nulidad de la institución de herederos, y así repartirse entre todos los herederos legitimarios a tenor con los preceptos de la sucesión intestada.

---

[7] Véase, *Torres Martínez v. Torres Ghigliotty*, 175 DPR, a la pág. 97.

Cual citado, el efecto de la preterición de un heredero legitimario resulta en la anulación de la institución de herederos. Sin embargo, cuando el testamento contiene disposiciones válidas en cuanto a legados y mejoras, estas deben mantenerse en cuanto no afecten la porción legítima.

De otro lado, especialmente ante la existencia de legados, los tribunales tenemos la tarea de interpretar las disposiciones testamentarias para determinar cuál fue la intención real del testador en cuanto a la disposición de sus bienes. La norma prevaleciente dicta que las disposiciones de un testamento deberán entenderse en el sentido literal de las palabras cuando la voluntad del testador sea clara y no suscite dudas sobre ella. Solo cuando la voluntad plasmada resulte confusa y genere dudas, deberá realizarse un análisis integral del testamento para interpretar la verdadera intención del testador, según los hechos particulares del caso.

Para interpretar la intención del causante en cuanto a los legados dejados al señor Russell, nos resulta necesario examinar el texto de su testamento; en específico, las cláusulas mediante las cuales ordenó su sucesión, transcritas de la siguiente manera:

> FOURTH: That Testator institutes his four children William Russell Embree, Charles Ray Embree, Russell William Embree and Lisa Marie Embree as his only legal heirs.--------
>
> FIFTH: It is the testator´s wish **to bequeath** to his son Russell William Embree the third of his inheritance known as the improvement third ("tercio de mejora") and third known as the free disposition third ("tercio de libre disposición"), **besides his participation in what is known as mandatory third ("tercio de legítima corta")**.----------------------------------------
>
> SIXTH: Testator´s patrimony will include all his assets and rights at the time of his death.------------------------------------------
>
> .    .    .    .    .    .    .    .    .
>
> EIGHT: Testators appoints his son Russell William Embree executor of his estate. […].---------------------------------------------

(Énfasis nuestro).

Como se puede apreciar, surge que el testador instituyó como sus únicos herederos a cuatro de sus hijos, a saber: William Russell Embree, Charles Ray Embree, Russell William Embree y Lisia Marie Embree. Adicionalmente, designó como albacea testamentario al señor Russell. A

este último, también le legó los tercios de libre disposición y de mejora, los cuales recibiría, además de lo que le correspondía del tercio de la legítima.

Luego de analizar íntegramente las cláusulas anteriores, no albergamos duda alguna sobre la voluntad del causante respecto a la transmisión del tercio de libre disposición. Al emplear expresamente el término "*bequeath*"[8], nos resulta clara e inequívoca su intención de individualizar al señor Russell como legatario de los tercios de mejora y de libre disposición. Ello, pues con un lenguaje desprovisto de opacidad, particularizó estas porciones de aquella que le corresponde del tercio de la legítima.

El sentido literal de las palabras utilizadas por el causante no admite otra conclusión. No hallamos otros criterios que nos muevan a interpretar que la palabra "*bequeath*" haya sido empleada con otro propósito que no fuese transmitir el tercio de libre disposición como legado de cuota alícuota a favor de su hijo, el señor Russell.

A tenor con lo anterior, colegimos que las porciones atribuidas específicamente al señor Russell constituyen legados válidos, puesto que el coheredero recurrido pudiera suceder al causante en una cuota alícuota del activo neto hereditario. Además, estos fueron ordenados dentro de los límites que permite nuestro ordenamiento jurídico sucesorio, pues el testador se aseguró de precisar cada porción de su herencia para respetar el tercio de legítima que le corresponde sus herederos legitimarios.

Por lo tanto, coincidimos con las determinaciones del foro primario en cuanto a que el testamento impugnado es uno parcialmente eficaz, y que deben mantenerse las disposiciones sobre el legado y la mejora, así como la designación del cargo de albacea, todas a favor del señor Russell. Por lo tanto, el Tribunal de Primera Instancia no incurrió en el error imputado por las hermanas Embree a tales efectos.

---

[8] Ya el Tribunal Supremo de Puerto Rico ha relacionado este término expresivo como un legado. Véase, *Torres Martínez v. Torres Ghigliotty*, 175 DPR, a la pág. 103.

Empero, no existe controversia en cuanto a la preterición de la peticionaria Belinda Embree. Surge claramente que esta fue totalmente omitida en el referido testamento[9], por lo que actuó correctamente el foro primario en declararla legitimaria, luego de anular la institución de herederos. Sin embargo, debido a la validez de los legados dejados al recurrido –ajenos a la institución de herederos–, lo que procede es la apertura intestada sobre la porción destinada a los legitimarios, de la cual la coheredera preterida tiene ahora participación. Solo así se puede dar cumplimiento a la voluntad del causante en la disposición de sus bienes.

IV

Por los fundamentos expuestos, expedimos el auto de *certiorari* y confirmamos la resolución intitulada *Sentencia*, según emitida por el Tribunal de Primera Instancia, Sala Superior de Aguada.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[9] Además, puntualizamos que el propio recurrido admitió la preterición alegada.