El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Tenemos la ocasión para resolver si la adjudicación de una finca a título mortis causa, a favor de una heredera forzosa, constituyó un llamamiento a título de heredero o si, por el contrario, es un legado de cosa específica, el cual quedó revocado cuando el testador, con posterioridad al otorgamiento del testamento, concedió a un tercero una opción de compra sobre la finca. Examinemos los hechos que originaron la controversia.
I
El 2 de marzo de 1999, el Sr. Belford Torres Vélez, otorgó un testamento abierto,(1) mediante el cual instituyó a sus hijos, el Sr. Juan Belford Torres Ghigliotty y la Sra. Alma Ivette Torres Martínez, como sus únicos y universa-les herederos. Además, nombró al señor Torres Ghigliotty albacea y administrador de todos sus bienes, derechos y acciones.
En este testamento, el causante dispuso específica-mente cuatro legados a favor de sus nietos. Asimismo, dis-puso que una vez pagados esos legados, el remanente del tercio de libre disposición fuera adjudicado a su hijo, el señor Torres Ghigliotty.
*89 En la sexta cláusula del testamento se detalló lo relativo a la institución de herederos y, luego de instituir herederos a sus dos hijos, el de cujus dispuso lo siguiente:
Asimismo dispone el testador, señor Torres Vélez, que al pa-garle a su hijo nombrado Juan Belford Torres Ghigliotty, lo que le corresponde en los bienes que deja a su fallecimiento se le adjudique como parte de lo que le pertenezca, la siguiente propiedad.(2) [Se describe una finca rústica de 67 cuerdas ubi-cada en el Municipio de Cabo Rojo.]
A renglón seguido, respecto a su hija, la señora Torres Martínez, señaló lo siguiente:
También dispone el testador, Don Belford Torres Vélez, que al pagarle a su hija nombrada doña Alma Ivette Torres Mar-tínez, por su participación hereditaria se le adjudique la si-guiente propiedad(3) [Se describe una finca de 25 cuerdas ubi-cada en Boquerón, Cabo Rojo.] (Énfasis suplido.)
Pasados dos años y medio del otorgamiento de su testa-mento, el señor Torres Vélez suscribió un “Contrato de Op-ción de Compra” con MAC Development Corp. (MAC Development). Mediante el contrato, el causante otorgó a favor de MAC Development una opción de compra sobre la finca adjudicada en el testamento a favor de su hija, la señora Torres Martínez.(4)
El 26 de enero de 2002, después de otorgado el contrato de opción de compraventa y antes de expirar el término dispuesto para que MAC Development ejerciera la opción, el señor Torres Vélez falleció, sin que la opción fuera ejercida. Le sobrevivieron sus dos hijos, el señor Torres Ghigliotty y la señora Torres Martínez, y su viuda, la Sra. Josefa Rivera Irizarry. MAC Development notificó enton- *90 ces a la sucesión del señor Torres Vélez que deseaba ejercer la opción de compraventa. (5)
Al no recibir respuesta, MAC Development presentó ante el Tribunal de Primera Instancia una demanda contra la Sucesión Torres Vélez y solicitó, entre otras cosas, el cumplimiento específico del contrato de opción y el otorga-miento de la escritura de compraventa correspondiente.(6)
Con el propósito de zanjar la controversia, la Sucesión Torres Vélez y MAC Development suscribieron y presenta-ron ante el foro primario un “Acuerdo por estipulación”, mediante el cual reconocían la validez del Contrato de Op-ción de Compra otorgado por su causante. Estipularon, además, que una vez recibido el correspondiente relevo del Departamento de Hacienda, otorgarían la escritura de compraventa. (7)
El Tribunal de Primera Instancia dictó una Sentencia para aprobar el “Acuerdo por estipulación” presentado por ambas partes. Como parte integral de ésta, se incorporó por referencia, la totalidad de los acuerdos habidos entre las partes. No obstante, en vista de las desavenencias en-tre las partes en torno a la distribución del producto de la compraventa de la finca adjudicada a la señora Torres Ghi-gliotty, el foro determinó que MAC Development debía con-signar el dinero en el tribunal hasta tanto se resolvieran sus diferencias. Así se hizo.
El 23 de mayo de 2003, la Sucesión Torres Vélez fue citada, mediante notario, para que comparecieran a la au-torización de la escritura de compraventa de la finca en cuestión, pero sus miembros no comparecieron.
*91 Un día antes de la fecha pautada para la autorización de la escritura de compraventa del inmueble, la señora Torres Martínez presentó ante el Tribunal de Primera Ins-tancia una demanda sobre división de comunidad de bie-nes, partición hereditaria y solicitud de cartas testa-mentarias contra el señor Torres Ghigliotty y la señora Rivera Irizarry. En ella alegó, inter alia, que el inmueble ob-jeto de la compraventa le pertenecía por disposición testa-mentaria y solicitó la totalidad del dinero producto de la compraventa. Adujo, además, que el señor Torres Ghiglio-tty incumplió con sus deberes como albacea, por lo que so-licitó su destitución y la indemnización de los daños y per-juicios causados por la negligencia de éste.
El señor Torres Ghigliotty contestó la demanda. Negó haber incumplido con sus deberes como albacea y solicitó la desestimación de la demanda. Por su parte, la viuda, señora Rivera Irizarry, en su contestación a la demanda, advirtió que el albacea no había presentado informes, in-ventario ni avalúo del caudal hereditario, razón por la cual solicitó al foro primario que ordenara a éste cumplir con estas obligaciones, a fin de proceder con la división del caudal y el pago de la cuota viudal usufructuaria.
Luego de varios incidentes procesales, el Tribunal de Primera Instancia emitió una sentencia, en la que declaró “no ha lugar” la demanda instada por la señora Torres Martínez. Resolvió, entre otras cosas, que la disposición testamentaria, sobre el inmueble que nos ocupa, era un le-gado de cosa específica y que. al enajenarse el inmueble me-diante el ejercicio de la opción de MAC Development, éste se tornó ineficaz e inexistente. A base de ello, concluyó que la señora Torres Martínez no tenía derecho al producto de la venta de la finca, el cual se refundiría en la masa hereditaria. El foro primario le ordenó al señor Torres Ghi-gliotty, como albacea testamentario, que procediera a rea-lizar el inventario, avalúo, partición y adjudicación de la herencia. De esta determinación, la señora Torres Martí-nez solicitó reconsideración, mas fue denegada.
*92 Inconforme, la señora Torres Martínez presentó ante el Tribunal de Apelaciones una “Solicitud de apelación y/o certiorari”, en la que solicitó la revocación de la sentencia emitida por el foro primario. Alegó que dicho foro erró al determinar que: (a) cuando el señor Torres Vélez suscribió el contrato de opción revocó el legado de cosa específica; (b) dicho legado se extinguió cuando MAC Development ejer-citó opción, y (c) la señora Torres Martínez no tenía dere-cho al producto de la venta de la finca.
El foro apelativo intermedio dictó sentencia, en la cual denegó por prematura la expedición del recurso de certiorari. Resolvió que, ya que no se habían adjudicado los derechos hereditarios de forma final, carecía de jurisdic-ción para intervenir en esa etapa de los procedimientos. No obstante, explicó su decisión y expresó su conformidad con los fundamentos del dictamen del foro primario.
Aún inconforme, la señora Torres Martínez presentó ante nos una Petición de certiorari y le imputó al foro ape-lativo intermedio la comisión del error siguiente:
ERRÓ EL [TRIBUNAL DE APELACIONES] AL DENEGAR LA EXPEDICIÓN DEL RECURSO DE CERTIORARI POR SER ÉSTE PREMATURO Y CARECER DE JURISDICCIÓN PERO A SU VEZ CONFIRMA LA RESOLUCIÓN RECU-RRIDA DEL [TRIBUNAL DE PRIMERA INSTANCIA] DONDE DECLARA NO HA LUGAR LA MOCIÓN DE SEN-TENCIA SUMARIA Y DESESTIMA LA DEMANDA. (Énfasis suplido.) Petición de certiorari, pág. 5.
Examinado el recurso, expedimos el auto solicitado. Posteriormente la señora Torres Martínez presentó ante nos su alegato y señaló la comisión de los errores siguien-tes:

ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DESESTIMAR LA DEMANDA Y DICTAR SENTENCIA CUANDO AÚN NO HA CULMINADO EL CASO.

*93 ERRO EL TRIBUNAL DE INSTANCIA AL DETERMINAR LO SIGUIENTE:

“La Opción fue ejercitada por el optante, MAC DEVELOPMENT, por lo que el legado se revocó completamente. Conforme a lo dicho por los comentaristas, una vez se revoca un legado por la voluntad del propio testador, el mismo es ineficaz y no existe. Al ser ineficaz el legado, la Demandante de epígrafe, Doña Alma Ivette Torres Martínez, no tiene derecho al pro-ducto de la venta de la finca que le fue dejada mediante legado de su padre, ya que el dinero no puede sustituir algo que dejó de tener validez jurídica.

Por lo tanto, el dinero producto de la compraventa del inmue-ble que le fue legado a Doña Alma Ivette Torres Martínez se funde en la masa hereditaria y ésta recoge en el caudal here-ditario como heredera forzosa.”

ERRÓ EL [TRIBUNAL DE APELACIONES] AL DENEGAR LA EXPEDICIÓN DEL RECURSO DE CERTIORARI POR SER ÉSTE PREMATURO Y CARECER DE JURISDICCIÓN, PERO A SU VEZ CONFIRMA LA RESOLUCIÓN [sic] RECU-RRIDA DEL TPI DONDE DECLARA NO HA LUGAR LA MO-CIÓN DE SENTENCIA SUMARIA Y DESESTIMA LA DEMANDA. Alegato de la parte peticionaria, pág. 5.
Con el beneficio de la comparecencia de todas las partes, estamos en posición de resolver el asunto ante nuestra consideración.
I — I
Antes de pasar a la controversia sustantiva planteada aquí, debemos resolver una cuestión de índole procesal, a saber: si el Tribunal de Apelaciones tenía jurisdicción para acoger un recurso de certiorari presentado en un litigio so-bre división de una herencia antes de la adjudicación final de ciertos derechos hereditarios.
El Tribunal de Apelaciones fundamentó su negativa para expedir el auto de certiorari presentado por la señora Torres Martínez, en que el asunto planteado por ésta era prematuro debido a que el tribunal a quo no había adjudi-cado aún los derechos hereditarios de forma final. Por tal *94 razón, concluyó que carecía de jurisdicción. Al así resolver, erró. Veamos.
Como es sabido, nuestro ordenamiento procesal civil establece una diferencia sustantiva entre lo que constituye una sentencia y una resolución. Esta distinción responde a la naturaleza y los requisitos de ambos dictámenes judiciales. Mientras que la sentencia adjudica de forma final la controversia trabada entre las partes, la resolución resuelve algún incidente en el litigio sin adjudicar la controversia de manera definitiva.(8)
La Regla 43.1 de Procedimiento Civil de Puerto Rico,(9) conceptúa la sentencia del modo siguiente:
Según se usa en estas reglas, el término “sentencia” incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la cual pueda apelarse. (Enfasis suplido.)
Del citado precepto se desprende que una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en forma tal, que no quede pendiente nada más que su ejecución.(10) Es de esa determinación que la parte inconforme, si así lo desea, puede interponer un recurso de apelación.(11)
*95 De otra parte, el foro primario podrá emitir una sentencia parcial cuando, conforme a la Regla 43.5 de Procedimiento Civil,(12) se trate de un caso que tenga partes o reclamaciones múltiples y el juzgador concluye que no existe razón alguna para posponer el dictamen de la sentencia en cuanto a una o más de esas reclamaciones o partes hasta la resolución final del pleito.(13) En conformidad con esta regla, la sentencia parcial emitida será final una vez el juez ordene expresamente su registro y el archivo en autos de copia de la notificación. Desde entonces comenzará a transcurrir el término para presentar un recurso de apelación.(14)
Al interpretar esta regla, hemos enfatizado que estaremos ante una sentencia parcial final si el Tribunal de Primera Instancia: (a) concluyó expresamente que no existía razón para posponer dictar sentencia sobre la reclamación que tenía ante sí y (b) ordenó expresamente que se registrara la sentencia.(15) Ausentes ambos requisitos, cualquier orden o forma de decisión que adjudique menos de la totalidad de las partes, no finaliza el pleito y se entiende que se trata de una resolución interlocutoria. (16)
De lo anterior se colige que la resolución es un dictamen que pone fin a un incidente en un proceso judi *96 cial respecto al procedimiento o a los derechos y las obliga-ciones de algún litigante o en cuanto a algún aspecto de la reclamación o reclamaciones que se están dilucidando en el proceso, ya sea éste anterior o posterior a la sentenciad.(17) En Rodríguez v. Tribl. Mpal. y Ramos, 74 D.P.R. 656, 664 (1953), al diferenciar entre una sentencia y una resolución, señalamos que “[u]na resolución pone fin a un incidente dentro del proceso judicial, mientras una sentencia pone fin a la controversia entre las partes mediante una adjudi-cación final”. (Enfasis suplido.)
Es imperativo puntualizar que la resolución interlocutoria, distinto a una sentencia, será revisable mediante un certiorari ante el Tribunal de Apelaciones en conformidad con la Regla 53.1(e)(1) de Procedimiento Civil,(18) y la Regla 32(D) del Reglamento del Tribunal de Apelaciones.(19) Es decir, dicho recurso deberá presentarse en el término de treinta días contados a partir del archivo en autos de una copia de la notificación de la resolución u orden interlocutoria. Siendo este término de cumplimiento estricto, su observancia tardía es permisible sólo si existe y se demuestra a cabalidad justa causa para no haber cumplido rigurosamente con éste.(20)
Ahora bien, una vez el foro apelativo intermedio ha adquirido jurisdicción sobre el recurso de certiorari, la expedición del auto y su adjudicación en sus méritos es discrecional. No obstante, esta discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII, enumera los criterios que dicho foro deberá considerar, de manera que *97 pueda ejercer sabia y prudentemente su decisión de aten-der o no las controversias que le son planteadas. La regla dispone que el Tribunal de Apelaciones al expedir un auto de certiorari, considerará los factores siguientes:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad, o error craso y ma-nifiesto en la apreciación de la prueba por el Tribunal de Pri-mera Instancia.
(D) Si el asunto planteado exige consideración más dete-nida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
De los factores mencionados se deduce que el foro ape-lativo intermedio evaluará tanto la corrección de la deci-sión recurrida así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento inde-bido o una dilación injustificada del litigio.(21)
En consecuencia, cuando se trate de una determinación que está pendiente ante la consideración del Tribunal de Primera Instancia, y que aún no ha sido finalmente resuelta, la cuestión recurrida no estará madura para ser considerada por el foro apelativo intermedio. Como se sabe, en el ámbito procesal un recurso prematuro es aquel que es presentado en la secretaría de un tribunal apelativo antes del tiempo en el cual éste adquiere jurisdicción.(22) Sobre *98 este particular, este Tribunal ha reiterado que, al igual que un recurso tardío, el recurso prematuro adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre.(23) Ello es así, puesto que su presenta-ción carece de eficacia y no produce ningún efecto jurídico, pues en ese momento o instante en el tiempo —punctum temporis— aún no ha nacido autoridad judicial o adminis-trativa alguna para acogerlo.(24)
Ahora bien, distinto es la negativa a expedir un auto de certiorari, la cual no implica necesariamente ausencia de jurisdicción. Como ya dijimos, una vez el foro apelativo intermedio adquiere jurisdicción sobre un recurso de certiorari, la expedición del auto y su adjudicación en sus méritos es discrecional. Claro está, la discreción de dicho foro debe responder a una forma de razonabilidad, que aplicada al discernimiento judicial, sea una conclusión justiciera y no un poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho.(25)
Debe de quedar claro que la denegatoria a expedir no implica la ausencia de error en el dictamen, cuya revisión se solicitó, ni constituye una adjudicación en sus méritos. Por el contrario, es corolario del ejercicio de la facultad discrecional del foro apelativo intermedio para no interve-nir a destiempo con el trámite pautado por el foro de instancia.(26) Ahora bien, la parte afectada por la denega-toria a expedir el auto de certiorari podrá revisar esta de-terminación cuando el Tribunal de Primera Instancia dicte sentencia final y ésta resulta adversa para la parte, quien aún estima importante revisarla por entender que ha afectado la decisión del caso.(27)
*99 En este caso, la señora Torres Martínez reclamó en su demanda ante el tribunal a quo, la correspondiente divi-sión de comunidad de bienes, partición hereditaria y soli-citud de cartas testamentarias contra el señor Torres Ghi-gliotty y la señora Rivera Irrizary. No obstante, el foro primario, previo a atender la causa de acción relativa a la liquidación y adjudicación de bienes hereditarios, tenía ante su consideración varios asuntos. En primer lugar, si la señora Torres Martínez tenía el derecho a recibir el pro-ducto de la venta de un bien inmueble alegadamente le-gado por su padre, el cual fue vendido en cumplimiento de un contrato de opción de compraventa otorgado posterior-mente por éste. En segundo lugar, si era procedente una acción por daños y perjuicios contra el señor Torres Ghi-gliotty, albacea testamentario, por incumplir alegada-mente con las obligaciones que el Código Civil impone al albacea en la administración de los bienes hereditarios.(28)
Luego de los trámites procesales pertinentes, el foro pri-mario declaró “no ha lugar” la demanda interpuesta por la señora Torres Martínez, en cuanto a la negligencia alegada del albacea testamentario. Al respecto, dicho foro concluyó que la solicitud por vía sumaria no era procedente, ya que cuando la señora Torres Martínez entabló su reclamación aún no se había realizado el correspondiente inventario, avalúo y distribución de los bienes del caudal hereditario.(29)
En cuanto al bien inmueble en controversia, el Foro de Primera Instancia señaló que éste constituía un legado de *100 cosa específica. Determinó, además, que el bien inmueble legado había sido revocado puesto que el testador, luego de otorgar su testamento, celebró un contrato de opción de compraventa mediante el cual enajenó dicho bien inmueble. Finalmente, concluyó que el dinero producto de la compraventa del inmueble no le correspondía a la se-ñora Torres Martínez, ya que se refundiría en la masa hereditaria.
Un análisis del contenido de la sentencia nos permite concluir que no estamos ante una sentencia que resuelva la cuestión litigiosa en su totalidad, pues no será hasta que el Tribunal de Primera Instancia adjudique finalmente los derechos hereditarios, que la cuestión litigiosa de este caso será resuelta en su totalidad.
Sin embargo, aunque el foro primario no emitió dicta-men alguno respecto a la partición de la herencia, al esta-blecer que el legado en controversia fue revocado adjudicó contra la señora Torres Martínez urna de las controversias planteadas en el caso ante nos.
Según lo discutido, y en cuanto a este aspecto de la con-troversia, es inevitable concluir que el Tribunal de Apela-ciones tenía ante su consideración una resolución interlocu-toria del Tribunal de Primera Instancia. Habida cuenta que la señora Torres Martínez cumplió con los requisitos exigidos para la presentación de un auto de certiorari, el foro apelativo intermedio tenía jurisdicción para atenderlo y expedir el auto solicitado para revisar la corrección sobre la determinación de la disposición testamentaria en controversia. Ello es así, puesto que la resolución interlo-cutoria tendría un impacto sustancial en el proceso de li-quidación y adjudicación de la herencia entre los interesados. En este sentido, el recurso cumplía con los cri-terios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra.
Además, y como discutiremos a continuación, el foro apelativo intermedio debió percatarse de que la determina-ción del foro recurrido, respecto a la interpretación de la *101 disposición testamentaria en controversia, era errónea en derecho.
III
Contrario a lo resuelto por el Tribunal de Primera Ins-tancia y sostenido por el foro apelativo intermedio, esta-mos ante un llamamiento a título de heredero y no de legatario. Ambos foros analizaron la controversia plan-teada ante ellos partiendo de la premisa errónea de que el bien inmueble adjudicado a la señora Torres Martínez constituyó un legado a su favor. Esa interpretación no es cónsona con la evidente intención del testador. Veamos.
Nuestro ordenamiento jurídico otorga a los individuos la libertad de plasmar su última voluntad a través del testamento. Claro está, tal libertad no es irrestricta, puesto que los testadores tienen que observar las limitaciones impuestas por el Código Civil en cuanto a la legítima de sus herederos forzosos.(30) A través del acto solemne del testamento, el testador puede instituir a personas determinadas o determinables en carácter de herederos o de legatarios para que le sucedan desde el momento de su muerte en sus bienes, derechos y obligaciones. De lo anterior se deduce que el testador puede disponer de sus bienes a título de herencia o de legado.(31)
A esos efectos, el Art. 609 del Código Civil dis-pone que es heredero quien sucede a título universal. (32) Dicho de otro modo, la persona o las personas designadas como herederos son los sucesores del causante, a quienes éste les adjudicó la totalidad de sus relaciones patrimoniales o una parte alícuota de ellas, independien- *102 temente del nombre con que sean designados. (33) A diferen-cia del heredero, el legatario es aquella persona que sucede a título particular. Esto significa que el legatario es el sucesor en bienes o en derechos determinados.(34)
Ante la ausencia de una definición del legado en nuestro Código Civil, el profesor González Tejera, acertadamente, lo define del modo siguiente:
[Llegado es la atribución que hace el testador a favor de una o varias personas, determinadas o determinables, por la cual ordena a uno o más de sus herederos, al albacea o, inclusive, a otro legatario, que a su debido tiempo proceda a ceder o a hacer al legatario un derecho, una cosa o un servicio, o entre-gar una fracción del activo neto hereditario. Rivera v. Sanoguet, 164 D.P.R. 756, 765 (2005). Véase E. González Tejera, Derecho de sucesiones: la sucesión intestada, San Juan, Ed. Universidad de Puerto Rico, 2005, T. II, pág. 390.
El Código Civil permite al testador plasmar en su testamento diversos legados, a saber: legado de cosa específica y determinada, legado de parte alícuota, legado genérico, legado de perdón de deuda, legado de educación y alimento, etc. En lo pertinente al caso ante nos, cuando el legado es de cosa específica y determinada, propia del testador, el legatario adquiere su propiedad desde la muerte de aquél y tiene derecho a hacer suyos los frutos o las rentas pendientes. (35) No obstante, el legatario de cosa específica y determinada no adquiere la posesión de la cosa legada, por lo que tendrá que pedir su entrega y posesión al heredero o albacea, si éste está autorizado para hacerlo.(36) Conviene señalar, además, que el derecho a adquirir el legado de cosa específica y determinada no impide que los acreedores, legitimarios o legatarios preferentes cobren lo *103 que les corresponda, a costa del legado de cosa específica.(37)
Aunque a primera vista puede resultar de fácil determinación la distinción entre un heredero y un legatario, no siempre es así. Es por ello que el Art. 617 del Código Civil, supra, dispone que en caso de duda y “aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia”. De otra parte, el Art. 697 del Código Civil señala que el “heredero instituido en una cosa cierta y determinada será considerado como legatario”.(38) Es menester indicar que la diferenciación entre heredero y legatario es vital, puesto que el heredero representa la herencia y responde de las deudas de ésta, mientras que legatario carece de esta representación y está desvinculado de esa responsabilidad.(39)
En diferentes ocasiones hemos tenido la oportunidad de enfrentarnos a la ardua y difícil tarea de determinar si cierto llamamiento realizado por el testador es a título de heredero o de legatario. En Junghanns v. Cornell University, 71 D.P.R. 673 (1950), resolvimos que, a pesar de que el testador utilizó las palabras “devise” y “bequeath” —indica-tivas en el Derecho anglosajón de un legado— el llama-miento a la Universidad de Cornell era a título de heredero y no de legatario, ya que la cláusula testamentaria transmi-tía a ésta la universalidad de su caudal hereditario y no un bien individual y determinado.(40)
Posteriormente, en Vivaldi v. Registrador, 86 D.P.R. 629 *104 (1962), siguiendo la exégesis pautada en el caso Jung-hanns, determinamos que el llamamiento realizado por doña Sabina Brigantti era a título de heredero, aun cuando había utilizado la palabra “lego” en su testamento. Al ana-lizar el testamento de la causante, determinamos que el llamamiento comprendía el remanente de los bienes de la universalidad del caudal.
Quince años más tarde, en Blanco v. Sucn. Blanco Sancio, 106 D.P.R. 471 (1977), tuvimos ante nuestra conside-ración una controversia similar. En esa ocasión resolvimos, entre otras cosas, que el testador no les había legado el tercio de libre disposición a sus nietos, sino que los había instituido herederos en esa porción de la herencia, dado que el llamamiento era a una cuota indeterminada del caudal hereditario.
De la jurisprudencia normativa discutida se deduce que hemos aplicado el criterio objetivo o germánico para determinar si el llamamiento realizado por el testa-dor era a título de heredero o de legatario. La teoría obje-tivista o germánica conceptúa como heredero “a quien sea llamado por el difunto a adquirir la totalidad o universali-dad de las relaciones jurídicas objeto de la transmisión, o una parte alícuota del caudal, haya sido o no designado como heredero”.(41) Según el criterio germánico, la califica-ción del llamamiento de herederos o de legatario va a de-pender del contenido objetivo de la disposición testa-mentaria. Por lo tanto, será heredero aquel en cuyo favor se dispone la universalidad, o una cuota o porción aritmética de la herencia, y será legatario aquel quien es llamado a recibir bienes específicos o determinados del caudal heredi-tario.(42)
*105 Ahora bien, la teoría objetivista o germánica no es el único criterio utilizado por los tribunales para determinar si las personas llamadas por el testador a sucederle son herederos o legatarios. Así pues, en Torres Ginés v. E.L.A., 118 D.P.R. 436 (1987), incorporamos definitivamente en nuestro ordenamiento jurídico la teoría subjetivista o romana. Dicha doctrina considera heredero a “ ‘aquel sucesor a quien el testador designe como heredero, independientemente, en principio, de que le instituya en toda la herencia, en una parte alícuota de ella o en una cosa cierta y determinada’ ”.(43) En conformidad con lo anterior, se colige que bajo la teoría subjetivista la clasificación del llamamiento dependerá de las palabras que haya utilizado el testador en su testamento. (44) Por lo tanto, si el testador utiliza la palabra “lego” se estará ante un legado y si emplea el término “heredero” se tratará de un llamamiento en tal concepto.(45)
Es de rigor indicar que, como regla general, al determinar si el llamamiento es a título de heredero o de legatario, se utilizará la teoría subjetivista. Empero, si hay duda sobre el llamamiento, se aplicará la teoría objetivista o germánica. Así lo reconocimos en Torres Ginés v. E.L.A., supra, pág. 455, al afirmar que en la jurisprudencia anterior —entiéndanse Junghanns, Vivaldi y Blanco— habíamos adoptado la teoría objetivista como mecanismo para dar cumplimiento a la verdadera voluntad del causante *106 por ésta no resultar clara, según los hechos particulares de cada caso.
Tres meses después de haber resuelto Torres Ginés v. E.L.A., supra, aplicamos la teoría subjetivista en Fernández Franco v. Castro Cardoso, 119 D.P.R. 154, 156 (1987). En esa ocasión, la testadora dispuso en su testamento lo siguiente: “por la presente lega la totalidad de la media porción de libre disposición de sus bienes a su esposo, Don Isidro Fernández Franco.” (Énfasis suprimido.) Según el lenguaje expresado por la causante, resolvimos que el lla-mamiento era a título de legado.
Contrario a lo resuelto en el caso anterior, en Cintrón Vélez v. Cintrón De Jesús, 120 D.P.R. 39 (1987), empleamos la teoría objetivista y concluimos que, a pesar de que el testador utilizó la palabra “lego” para adjudicarle el tercio de mejora y el tercio de libre disposición a sus nietos, en realidad había hecho un llamamiento a la universalidad de sus bienes. Ello es así, puesto que del testamento se des-prendía que el causante quería proteger a sus nietos, de-jándoles la mayor parte de su herencia, y por ello no apli-camos la teoría subjetivista.
Finalmente en Fernández v. Fernández, 152 D.P.R. 22 (2000), analizamos la cláusula testamentaria en controver-sia desde el criterio subjetivista, ya que la voluntad del causante era clara e inequívoca. Resolvimos que el testa-dor había instituido a su esposa premuerta como legataria de parte alícuota, puesto que dispuso que dicho legado se pagase del remanente del tercio de libre disposición, una vez se hayan pagado los otros legados.
En resumidas cuentas, cuando la voluntad del testador es clara y no hay dudas sobre ella, se utilizará la teoría subjetivista o romana. De otro lado, se aplicará el criterio objetivista o germánico, cuando de un examen integral del testamento se concluya que la voluntad del causante es difusa y hay dudas sobre ésta. Al realizar el análisis, es preciso tener por norte que nuestro ordenamiento suceso- *107 rio está “cimentado en dar cumplimiento a la voluntad del testador en la disposición de sus bienes en lo que no sea contrario a la ley”.(46)
IV
Teniendo estos principios en mente, pasemos a los mé-ritos de la controversia.
La señora Torres Martínez alega que su padre, el señor Torres Vélez, la designó como legataria en el acápite sexto del testamento. Como tal, reclama el dinero producto de la compraventa, mediante la cual MAC Development adqui-rió de la sucesión dicha finca. No le asiste la razón.
Es un principio básico de hermenéutica que toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador, y en caso de duda se observará lo que parezca más conforme a la intención del testador, según el tenor del mismo testamento.(47)
De una lectura del testamento en cuestión se desprende que el testador en el acápite quinto de su testamento plasmó la institución de herederos. Acto seguido, dispuso lo siguiente:
TAMBIÉN dispone el testador, don Belford Torres Vélez, que al pagarle a su hija nombrada doña Alma Ivette Torres Martínez, por su participación hereditaria se le adjudique la siguiente propiedad .... (Énfasis suplido.) Apéndice de la Peti-ción de certiorari, pág. 62.
Sin lugar a dudas, estas expresiones del testador reve-lan que el llamamiento que éste realizó, respecto a la pro-piedad, es a título de heredero, y no de legatario. El sentido literal de sus palabras —“por su participación hereditaria se le adjudique la siguiente propiedad”— no admite otra *108 conclusión. La voluntad del causante es evidente e inequí-voca, pues expresamente dispuso que la participación he-reditaria de su hija se pagase con un bien del caudal.
A esos efectos, el testador dispuso de un bien de su patrimonio, según la autoridad conferida por el Art. 1009 de nuestro Código Civil.(48) para efectuar la partición de sus bienes en el testamento. Según este artículo, el testador tiene la libertad para hacer la partición de sus bienes en el testamento y disponer la forma como se pagará la legítima de los herederos forzosos.(49) En vista de ello, el testador puede adjudicar cualquier bien específico que sea suficiente para satisfacer la porción hereditaria de sus legitimarios. Según estos principios, el hecho de que el testador optara por adjudicarle a su hija un bien específico en pago de la porción hereditaria, no implicó la institución de un legado.
La actuación del testador fue asegurar a esta heredera la fuente de pago de la participación hereditaria que por ley le correspondía a ésta. Es decir, aseguró con dicho bien inmueble el derecho a cobrar su participación hereditaria, en este caso, su legítima estricta.(50) No tenemos otros ele-mentos que nos indiquen una intención distinta.
Finalmente, surge del expediente de autos que, la suce-sión Torres Vélez reconoció la validez del contrato de op-ción suscrito por el testador y MAC Development sobre la finca adjudicada en el testamento a la señora Torres Martínez. La compraventa se llevó a cabo una vez dicho foro dictó sentencia por estipulación. Desde entonces, la compradora, MAC Development, consignó el producto de la compraventa en la secretaría del Tribunal de Primera Ins- *109 tanda por no existir acuerdo entre los herederos en cómo adjudicar el producto de esa compraventa.
Por lo tanto, con el fin de disponer de esta controversia, resolvemos que, ya que la finca que nos ocupa no es un legado, el derecho civil aplicable exige que el producto total de la venta de esta finca se refunda en la masa here-ditaria para prorratearlo conforme a las disposiciones testamentarias.
Desde luego, tratándose de la legítima estricta de la se-ñora Torres Martínez, en caso de que ese bien no satisfaga económicamente la participación hereditaria que le corres-ponde a ésta como heredera forzosa, está obligada la suce-sión a pagar el remanente que falte para completar su par-ticipación en el caudal.(51) Por el contrario, si el producto del bien inmueble adjudicado excede la participación here-ditaria de la señora Torres Martínez, dicho exceso revertirá al caudal hereditario y se distribuirá a prorrata conforme a las disposiciones testamentarias entre los tres tercios de ley.
V
Por las razones antes expuestas, se revoca en su totali-dad la Sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúe los procedimientos de forma compatible con lo aquí resuelto.
La Jueza Asociada Señora Rodríguez Rodríguez disintió sin opinión escrita.

 Testamento Abierto y Revocación, Apéndice la Petición de certiorari, págs. 56-64.

 Cláusula sexta del Testamento.

 Íd.

 El “Contrato de Opción de Compra” se suscribió el 28 de septiembre de 2001. El precio de compraventa de la finca fue cuatrocientos mil dólares. Además, se dis-puso que el señor Torres Vélez podría escoger un apartamento del proyecto que sería desarrollado por MAC Development Corp. (MAC Development). Véase el “Contrato de Opción de Compraventa”, Apéndice de la Petición de certiorari, págs. 101-105.

 MAC Development realizó una notificación mediante carta de 14 de agosto de 2002, la cual envió a cada uno de los miembros de la Sucesión Torres Vélez por correo certificado. Véase el Apéndice de la Petición de certiorari, págs. 106-108; “Contrato de Opción de Compra”, id., pág. 102.

 Esta demanda originó un pleito distinto al de autos, identificado como MAC Development, Corp. v. Sucn. Belford Torres Vélez et als., Civil Núm, IAC 2002-0091. Véase la Demanda enmendada, Apéndice de la Petición de certiorari, págs. 91-99.

 Véase el Acuerdo por estipulación, Apéndice de la Petición de certiorari, págs. 109-110.

 U.S. Fire Ins. v. A.E.E., 151 D.P.R. 962 (2000).

 32 L.P.R.A. Ap. III.

 Feliberty v. Soc. de Gananciales, 147 D.P.R. 834, 838 (1999); Bco. Santander P.R. v. Fajardo Farms Corp., 141 D.P.R. 237, 244 (1996); First Fed. Savs. v. Nazario et als., 138 D.P.R. 872, 877 esc. 4 (1995); Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 655 (1987). Véase, además, J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. II, pág. 680.

 Suárez v. E.L.A., 162 D.P.R. 43, 62 (2004). Cabe señalar que una sentencia es final cuando el tribunal ha resuelto todas las cuestiones planteadas, y contra la cual cualquier parte podría interponer recurso de apelación en el término dispuesto para ello en el ordenamiento procesal vigente. De otra parte, una sentencia final y firme es aquella contra la cual no cabe un recurso de apelación debido a que transcurrió el término para solicitar apelación o por razón de que, presentado el recurso de apela-ción, el tribunal apelativo confirmó ésta y los términos de reconsideración ya transcurrieron. Véanse, además: Bco. Santander P.R. v. Fajardo Farms Corp., supra, pág. 244; Cuevas Segarra, op. cit., pág. 680.

 32 L.P.R.A. Ap. III.

 La Regla 43.5 de Procedimiento Civil dispone lo siguiente:
“Cuando un pleito comprenda más de una reclamación, ya sea mediante de-manda, reconvención, demanda contra coparte o demanda contra terceros o figuren en él partes múltiples el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene ex-presamente que se registre sentencia.
“Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a correr en lo que a ella respecta los términos dispuestos en las reglas 47, 48 y 53.” (Énfasis suplido.)

 Íd.

 U.S. Fire Ins. Co. v. A.E.E., supra.

 Torres Capeles v. Rivera Alejandro, 143 D.P.R. 300 (1997).

 U.S. Fire Ins. Co. v. A.E.E., supra, pág. 967; Díaz v. Navieras de P.R., 118 D.P.R. 297, 301-302 (1997). Véase, además, H.A. Sánchez Martínez, Práctica jurídica de Puerto Rico: derecho procesal apelativo, San Juan, Ed. Lexis Nexis, 2001, pág. 351 esc. 831.

 32 L.P.R.A. Ap. III, R. 53.1(e)(1).

 4 L.P.R.A. Ap. XXII.

 Arriaga v. F.S.E., 145 D.P.R. 122 (1998).

 Negrón v. Srio. de Justicia, 154 D.P.R. 79 (2001).

 Pueblo v. Santana Rodríguez, 148 D.P.R. 400 (1999).

 S.L.G. Szendrey-Ramos v. F. Castillo, 169 D.P.R. 873 (2007).

 Pérez v. C.R. Jiménez, Inc., 148 D.P.R. 153 (1999).

 H.A. Sánchez Martínez, Práctica jurídica de Puerto Rico: derecho procesal apelativo, San Juan, Ed. Lexis Nexis, 2001, pág. 560.

 Feliberty v. Soc. de Gananciales, 147 D.P.R. 834 (1999).

 Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 658 esc. 2 (1997).

 Art. 826 del Código Civil, 31 L.P.R.A. see. 2523.

 En lo pertinente, la Sentencia del Tribunal de Primera Instancia expresó lo siguiente:
“En este caso, el albacea tuvo que esperar a las resultas de los sucesos relacio-nados con el bien en cuestión, para entonces proceder a valorar y a repartir los bienes de la herencia. En adición, al haber controversia sobre si a dicha Demandante había que entregarle específicamente el bien, o si por el contrario había que entre-garle el dinero producto de la compraventa, la entrega del mismo se detuvo.
“Por lo antes esbozado, este Tribunal entiende que el albacea no ha incurrido en negligencia, por lo que, no procede imponerle responsabilidad.” Apéndice de la Peti-ción de certiorari, pág. 40.

 Véanse: Art. 692 del Código Civil, 31 L.P.R.A. sec. 2281; Arts. 735 a 741 del Código Civil, 31 L.P.R.A. secs. 2361 a 2367.

 Véase Art. 617 del Código Civil, 31 L.P.R.A. sec. 2122.

 31 L.P.R.A. sec. 2091.

 Blanco v. Sucn. Blanco Sancio, 106 D.P.R. 471, 478 (1977).

 Íd.

 Art. 804 del Código Civil, 31 L.P.R.A. sec. 2493.

 Art. 807 del Código Civil, 31 L.P.R.A. sec. 2496.

 Rivera v. Sanoguet, 164 D.P.R. 756, 766 (2005).

 31 L.P.R.A. sec. 2286.

 Véase Torres Ginés v. E.L.A., 118 D.P.R. 436, 459 (1987).

 Junghanns v. Cornell University, 71 D.P.R. 673 (1950).

 Torres Ginés v. E.L.A., supra, págs. 453-454.

 Íd., pág. 454. La profesora y hoy jueza del Tribunal de Primera Instancia, Bnid Martínez Moya, expresó en su escrito El Derecho Sucesorio Puertorriqueño, 67 Rev. Jur. U.P.R. 1, 15 (1998), que la adopción del enfoque germánico tuvo el efecto de que, por mucho tiempo, se le negara reconocimiento jurídico a la figura del legado de parte alícuota. Razonó, además, que ello era así puesto que una de las características *105 determinantes del legado de parte alícuota es la indeterminación de su objeto. El profesor Efraín González Tejera define “legado parciario” o “de parte alícuota” como aquel que se hace a favor de una o varias personas no herederas de una porción aritmética ideal o, lo que es lo mismo, de una fracción de la totalidad del caudal. Véase E. González Tejera, Derecho de sucesiones: la sucesión intestada, San Juan, Ed. U.P.R., 2005, T. I, pág. 9.

 Torres Ginés v. E.L.A., supra, pág. 453.

 Martínez Moya, supra, pág. 15.

 Id. Al adoptar el enfoque romano en Torres Ginés v. E.L.A., supra, dimos cabida en nuestro ordenamiento a la figura sui géneris del legado de parte alícuota. En ese caso, concluimos que la intención del testador era clara y que no había duda que el legado hecho a su hija Rixie era de parte alícuota.

 Torres Ginés v. E.L.A., supra, pág. 462.

 Art. 624 del Código Civil, 31 L.P.R.A. sec. 2129.

 31 L.P.R.A. sec. 2875.

 El artículo dispone, también, que “[e]l padre que en interés de su familia quiera conservar indivisa una explotación agrícola, industrial o fabril, podrá usar de la facultad conferida en est[e artículo], disponiendo que se satisfaga en metálico su legítima a los demás hijos”. 31 L.P.R.A. sec. 2875.

 Véase Testamento abierto y revocación, Apéndice de la Petición de certiorari, pág. 62.

 Véase el Art. 743 de nuestro Código Civil, 31 L.P.R.A. sec. 2369.